## WURM v. UNITED STATES.

(Circuit Court of Appeals. Seventh Circuit. December 8, 1924.)

No. 3323.

Intoxicating liquors ⬅➡249—Revenue officers held justified in entering premises without search warrant.

Where revenue officers, who seized warm moonshine in accused's truck, had their suspicions aroused by improbable story as to where he obtained it, and by his attempt to prove identity by gas receipt, giving name which officers knew was not his own, and on approaching premises described in receipt officers saw windows all steamed up on inside, held, that they were justified in entering premises without search warrant.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Edward Wurm was convicted of violating the National Prohibition Act, and he brings error. Affirmed.

Louis H. Koenig, of Milwaukee, Wis., for plaintiff in error.

Roy L. Morse, of Milwaukee, Wis., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Conviction for violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). The one question raised is as to the admissibility of evidence obtained upon entry of a residence at 272 Jefferson street, Milwaukee. A search warrant for the premises was obtained in the Wisconsin state court. The entry and seizure was conducted by a federal revenue agent, with a state officer present and nominally serving the warrant. The government concedes that the warrant itself was invalid, but insists that under the facts the entry of the premises was lawful.

The wholly uncontradicted evidence for the government showed that revenue officers, suspecting that a truck bearing Wurm's name was being used in transporting illicit liquor, were on the watch for it, and late in December saw it drive into an alley and stop in the rear of a saloon and boarding house at 035 Thirty-Fifth street. Examining the truck, they found on it, concealed beneath rags and torn clothes, four two-gallon jugs of moonshine whisky, which was warm, as though just taken from where it was made. Wurm, who was in charge of the truck, told them a preposterous story of some unknown man giving it to him near some unremembered park, asking him to take it home and keep it till he called for it. He was taken into custody, and for his identification produced some papers, including a recent receipt from the gas company to one Gleckner for gas consumed at 272 Jefferson street. Inquiry at the gas office showed that the deposit required to be paid for having the gas turned on there was made in the name of Gleckner. Going to these premises, the officer attempted vainly to obtain entrance at the front door, but on going to the rear he found the windows all steamed up on the inside, as though cooking on a considerable scale was going on within, where two men were seen to be walking about. After knocking at the rear door, they were admitted by one of these men, who said they were working there for Wurm. On going in they found three 25-gallon stills in operation, 700 gallons of moonshine mash, 50 gallons of "moonshine," "home-brew" boilers, and various other ingredients of and paraphernalia for making so-called "moonshine" and "home-brew."

It does not appear that the premises were occupied for residence purposes; the fair inference from the evidence being that Wurm not only did not live there, but that he did live at the Thirty-Fifth street place. It thus appears that the officers, having seized this warm whisky while in Wurm's possession (knowing that to be his name), and hearing the ridiculous story he told to explain his possession of the liquor, had their suspicions very properly and naturally directed to these premises, through the fact of his possession of the gas receipt, and deposit being in the name of another. With their suspicions thus aroused and directed, and supplemented by what they saw on the approach of the premises and before entry, they were in our judgment justified in entering without search warrant this combined distillery and brewery. This is decisive of the only issue involved, and does not take into consideration the undisputed evidence that upon their return from the premises Wurm stated to them that he was in fact the proprietor, and employed the two men to make "moonshine" and "home-brew," which he sold and delivered to saloonkeepers.

The judgment is affirmed.